MICHAEL D. ROUNDS
Nevada State Bar No. 4734
ADAM K. YOWELL
Nevada State Bar No. 11748
BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, Nevada 89511
Telephone: (775) 324-4100
Facsimile: (775) 333-8171
Email: mrounds@bhfs.com

*Attorneys for Defendant, Twitter, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| YOUTOO TECHNOLOGIES, LLC, | CASE NO. 3:17-ms-00007 |
| Plaintiff, | DEFENDANT TWITTER, INC.'S MOTION TO COMPEL STRATEGIC GAMING MANAGEMENT LLC TO PRODUCE DOCUMENTS PURSUANT TO FED. R. CIV. P. 45 |
| v. | |
| TWITTER, INC., | |
| Defendant. | |

Defendant Twitter, Inc. ("Twitter" or "Defendant") hereby moves the Court to compel Strategic Gaming Management LLC ("Strategic Gaming") to produce documents responsive to Twitter's subpoena in the patent infringement litigation brought by Youtoo Technologies, LLC ("Youtoo") against Twitter, which remains pending as Case No. 3:16-cv-00764-N in the United States District Court for the Northern District of Texas ("the Litigation").

I.  **INTRODUCTION**

Strategic Gaming is a Nevada company that, along with its affiliate Trestle Creek Properties, LLC, loaned hundreds of thousands of dollars to Youtoo's parent company in 2015. The loans were secured in part by a security interest in Youtoo's patent portfolio, including the patents-in-suit. Based on Strategic Gaming's limited production to date, it appears that the loans were in default as of November 2015, and Strategic Gaming claimed a lien on the patents. That lien apparently was not terminated until October 2016, more than six months after Youtoo filed suit against Twitter on March 18, 2016.

1

The question of who held rights to the patents-in-suit on the day that Youtoo initiated the Litigation goes to the threshold issue of standing. To the extent that Strategic Gaming (or some other third party) retained rights to the Youtoo patents as of March 2016, Youtoo may have lacked standing to sue Twitter and the underlying patent infringement case should be dismissed.

Based on Strategic Gaming's apparent rights and interests in the patents-in-suit, Twitter issued a narrowly-tailored subpoena to Strategic Gaming to obtain documents related to Strategic Gaming's ownership and security interest in the patents-in-suit, and any other documents relating to the patents-in-suit, including valuations, and infringement and invalidity analyses. The documents sought by Twitter are relevant to multiple core issues in the Litigation, including ownership of and rights to the patents-in-suit, the scope of the patents, patent validity, the alleged infringement, and damages. The court overseeing the Litigation has already granted Twitter's motions to compel similar documents from Youtoo and another third-party, finding that the requests were relevant, and not overly broad or unduly burdensome. *See, e.g.*, Order, *Youtoo Techs., LLC v. Twitter, Inc.*, No. 3:16-CV-00764-N (N.D. Tex. May 31, 2017), ECF No. 95 & Order, *Youtoo Techs., LLC v. Twitter, Inc.*, No. 3:17-mc-00009-BF (N.D. Tex. June 13, 2017), ECF No. 18. Yet, to date, Strategic Gaming has produced only the promissory notes with Youtoo, two letters, and UCC financing statements.

Nearly four months have passed since Strategic Gaming received Twitter's document subpoena. It has been more than three months since Strategic Gaming's counsel—the same lawyers that represent the plaintiff Youtoo in the underlying litigation—promised to investigate what responsive documents Strategic Gaming would produce. Having heard only silence for most of this time, only to receive an untimely and limited production from Strategic Gaming, Twitter is forced to bring this motion to compel.

## II. FACTUAL BACKGROUND

### A. Strategic Gaming Loaned Hundreds of Thousands of Dollars, Secured with Youtoo's Patent Portfolio, and That Loan Went Into Default.

Beginning at least as early as 2012, Youtoo parent company, Youtoo Media LP ("Youtoo Media"), and other Youtoo affiliates, began borrowing millions of dollars from a number of third-

party lenders,[1] and secured those loans with Youtoo's patent portfolio. *See* Miller Decl. Ex. 1[2] ¶¶ 15–17. In 2015, Youtoo and Youtoo Media borrowed more than $500,000 from Strategic Gaming and its affiliate, Trestle Creek Properties, LLC. *Id.* ¶ 17. These loans were guaranteed and secured by Youtoo's portfolio of patents and patent applications, including the three patents that have been asserted against Twitter in the Litigation. *Id.*

[REDACTED]. Based on the UCC Financing Statements produced by Strategic Gaming, it appears that Strategic Gaming's lien was not terminated until October 4, 2016, more than six months after Youtoo filed suit against Twitter. Miller Decl. Ex. 4.

### B. Twitter Served a Subpoena on Strategic Gaming, and Strategic Gaming's Counsel Agreed to Produce Responsive Documents.

On March 2, 2017, Twitter prepared and served a document subpoena on Strategic Gaming. Miller Decl. Ex. 5. The subpoena included narrowly-tailored document requests regarding Strategic Gaming and Youtoo's agreements, the rights held by various parties to the patents-in-suit, potential licensing and sales of the patents-in-suit, infringement and invalidity analyses of the patents-in-suit, and any valuations of Youtoo and the patents-in-suit. *See id.*

---

[1] Two of those lenders, Covenant Global Alpha Fund, L.P. and Heartland Bank were also served subpoenas by Twitter. As with Strategic Gaming, they have failed to produce promised responsive documents, and so are the subject of separate motions to compel. All three lenders are represented by Youtoo's litigation counsel.

[2] Exhibit 1 to the Miller Declaration is a declaration of Christopher Wyatt, Youtoo's then-CEO, filed publicly in separate litigation in the Northern District of Texas, *Mansour Bin Abdullah Al-Saud v. Youtoo Media, L.P.*, No. 3:15-cv-03074-C (N.D. Tex. Oct. 1, 2015), ECF No. 12-1.

3

Samuel E. Joyner, of the Carrington Coleman law firm (which also represents Youtoo in the Litigation), responded to Twitter with a letter on March 30, 2017 listing Strategic Gaming's responses and boilerplate objections to the subpoena. Miller Decl. Ex. 6. On March 30, 2017, counsel for Twitter and Strategic Gaming—who participated on behalf of not only Strategic Gaming but also Youtoo and other third parties subpoenaed by Twitter—met and conferred to discuss Twitter's subpoena to Strategic Gaming. Miller Decl. ¶¶ 2–3. During that meet and confer, Strategic Gaming raised objections that bordered on frivolous—for instance, Strategic Gaming objected to Twitter's subpoena because Twitter supposedly did not formally define entities that Twitter had in fact specifically identified by name and corporate form in the bodies of the requests (*e.g.*, "Covenant Global Alpha Fund, L.P." and "Strategic Gaming Management, LLC"), going so far as to argue that Twitter was required to provide in its subpoena the "state of incorporation" of non-natural entities described in the request. *Id.* Nonetheless, Strategic Gaming agreed to investigate the responsive documents it possessed and would produce in response to Twitter's subpoena.[3] *Id.* ¶ 3.

Five weeks passed after the March 30, 2017 meet and confer. Strategic Gaming neither produced documents nor communicated with Twitter regarding the status of its compliance with the subpoena. *Id.* ¶ 4. So, on May 4, 2017, Twitter sent a letter to Strategic Gaming's lawyers outlining the agreements reached on March 30 regarding the scope of the subpoena and requesting prompt compliance with Twitter's subpoena. Miller Decl. Ex. 7. Mr. Joyner responded via email on Friday, May 12, 2017, promising to respond by the "beginning of next week." Miller Decl. Ex. 8. Then, on Wednesday, May 17, 2017, Mr. Joyner followed up with a brief email that stated in full: "I'm still working on the issues regarding your subpoenas. You will have a response by Friday." Miller Decl. Ex. 9. Despite Strategic Gaming's counsel promising a "response" by Friday, May 19, 2017, none followed. Miller Decl. ¶ 4. Finally, on June 14, 2017, Strategic Gaming's counsel confirmed that Strategic Gaming would produce "non-

---

[3] Although Strategic Gaming initially objected to the subpoena as violating Federal Rule of Civil Procedure 45(c)(2) because the subpoena specified San Francisco, California as the location for the document production, Strategic Gaming has not stood on this objection. *See* Miller Decl. Ex. 7.

privileged, responsive documents." Miller Decl. Ex. 10. Twitter's counsel immediately followed up asking for confirmation that the search for and production of documents would not be narrowed based on any objections. *Id.* Strategic Gaming again failed to respond. Miller Decl. ¶ 5.

Upon reviewing Strategic Gaming's production, however, Twitter learned that Strategic Gaming has failed to produce documents corresponding to at least the following categories requested in the subpoena (Miller Decl. Ex. 5):

(1) Communications between Strategic Gaming, Youtoo, and/or any other third-party regarding any interest in the Youtoo patents (*see, e.g.*, Request Nos. 1–3, 21–26, 28);

(2) Documents relating to the decision to initiate the patent infringement case against Twitter (*see, e.g.*, Request No. 5);

(3) Documents sufficient to show Strategic Gaming's interest, financial or otherwise, in the Youtoo Patents and/or the outcome of the Twitter patent litigation (*see, e.g.*, Request Nos. 1–3, 7–8, 11, 13–14, 19–20); and

(4) Documents relating to any potential sale or monetization of the patents-in-suit (*see, e.g.*, Request Nos. 7–10, 13–18, 20, 28).

Twitter followed up with Strategic Gaming's lawyers on June 16, 2017 asking them to confirm that all responsive documents—including all communications with Youtoo—would be forthcoming as promised months before. Miller Decl. Ex. 11. Rather than addressing the failure to produce communications or to answer directly Twitter's question concerning Strategic Gaming's search, Strategic Gaming's lawyers simply asserted—ten days later—that "we produced the documents in Strategic Gaming Management, LLC's possession of which it was aware that were responsive to Twitter's March 16, 2017 document subpoena (even though it was defective). No documents were withheld on the basis of privilege or immunity." Miller Decl. Ex. 10.

Twitter again attempted to schedule a telephonic meet and confer to resolve these issues on June 27, 2017. Miller Decl. ¶ 7. Strategic Gaming agreed to the meet and confer. *Id.* In view of the tenor of prior meet and confers, Twitter also told Strategic Gaming that it would schedule a court reporter to transcribe the call. *Id.* Twenty-five minutes before that call was to take place, Strategic Gaming's counsel abruptly cancelled. Miller Decl. Ex. 12 at 1 & ¶ 7. Twitter again

followed up on July 3, 2017, asking once more for Strategic Gaming to explain the scope of its document production. Miller Decl. Ex. 10. To date, Twitter has not received a response to this email. Miller Decl. ¶ 7. Given the extraordinary delay and failure to participate in discovery, Twitter is forced to bring this motion.

### III.   ARGUMENT

Third-party discovery is governed by Federal Rule of Civil Procedure 45. The scope of discovery through a Rule 45 subpoena is the same as the scope permitted under Federal Rule of Civil Procedure 26(b). *See, e.g., Am. Fed'n of Musicians v. Skodam Films, LLC*, 313 F.R.D. 39, 43 (N.D. Tex. 2015).

Twitter has diligently pursued production of the subpoenaed documents from Strategic Gaming to little avail. Despite Twitter's repeated attempts to discuss its requests and efforts to reach a compromise, Strategic Gaming has continued to delay and refuses to answer basic questions about its search for and production of documents. Twitter thus respectfully requests that the Court order Strategic Gaming to immediately produce all documents responsive to Twitter's subpoena.

#### A.   The Discovery Sought By Twitter Goes to Core Issues in This Litigation.

As Twitter explained to Strategic Gaming during the parties' March 30, 2017 meet and confer (and later memorialized in Twitter's May 4, 2017 letter), the subpoena calls for documents directly related to fundamental issues such as patent ownership and standing to sue, claim scope, patent validity and infringement, and damages. Miller Decl. Ex. 7 & ¶ 2. Without standing on any objections or stating an intention to withhold any documents, Strategic Gaming's counsel promised to investigate what responsive documents Strategic Gaming would produce for all of the requests in Twitter's subpoena. Miller Decl. ¶ 3. To date, Strategic Gaming has failed to produce any documents.

*First*, many of the requests in the subpoena call for Strategic Gaming's documents relating to the threshold issues of patent ownership and standing to sue for patent infringement. See, e.g., Request Nos. 1–3, 5, 7–9, 11, 13–14, 19, 21–22, 23–25, 27–28. *See* Miller Decl. Ex. 5. During the parties' meet and confer on these issues, Twitter explained its concerns that Youtoo

may not have standing to sue because of the various ownership and security interests held by other entities in the patents-in-suit, including Strategic Gaming. But neither Youtoo nor Strategic Gaming (or their lawyers) have ever responded substantively to Twitter's concerns. *See* Miller Decl. Ex. 7. Discovery about the ownership of and leverage on the patents-in-suit is relevant as a threshold matter—it is a basic element of determining who has standing to bring patent infringement claims in the first place. *See InternetAd Sys., LLC v. Opodo Ltd.*, 481 F. Supp. 2d 596, 605 (N.D. Tex. 2007) (patent standing requires "determin[ing] whether all substantial rights have been transferred to [the party asserting claims of infringement]"). If Youtoo itself does not (or did not at the time it filed suit) actually possess substantial control of the patents-in-suit, it has no standing to assert the patents and its claims must be dismissed—or (alternatively) Youtoo would be required to join the actual patent owner (*e.g.*, Strategic Gaming) to the case as a co-plaintiff. *See id.*

*Second*, Twitter's subpoena is directed to topics relevant to basic issues of liability, including claim construction, validity, and infringement. For example:

- "Documents relating to any infringement search, study, analysis, evaluation, investigation, or opinion related to any portion of the subject matter disclosed or claimed by any of the Youtoo Patents" (Request No. 15);

- "Documents relating to any investigation, testing, analysis, study, examination, or reverse engineering, conducted by or on behalf of You, Youtoo and/or AQUA, of any Twitter product or technology" (Request No. 16);

- "Documents relating to the patentability, validity, invalidity, enforceability, unenforceability, scope, or interpretation of any of the Youtoo Patents" (Request No. 17); and

- "Documents disclosed to, provided to, reviewed by, or prepared by any engineer, expert, or consultant in connection with any of the Youtoo Patents" (Request No. 18).

Strategic Gaming may have acquired such documents in connection with its substantial loans to Youtoo, secured by the patents-in-suit. Strategic Gaming has made no effort to contest the relevance of these documents during the parties' discussions following Strategic Gaming's initial response and objections to Twitter's subpoena, nor can it.

*Third*, Twitter's subpoena seeks information relevant to the damages analysis in the Litigation. *See, e.g.*, Miller Decl. Ex. 5 (Request Nos. 1–3, 5, 7–14, 20–22, 24–25, 27–28).

Twitter's subpoena seeks, among other things, "any valuation or monetary assessment of the subject matter disclosed or claimed by any of the Youtoo patents," communications between Strategic Gaming and Aqua licensing regarding the Litigation, and any agreements between Strategic Gaming and other entities regarding the patents-in-suit. These documents go to the heart of the damages analysis in the Litigation, and Strategic Gaming has made no sustainable objection to the contrary.

In sum, Strategic Gaming cannot deny the relevance of the requested documents. Its lawyers did not stand on relevance objections to any of Twitter's requests during the March 30, 2017 meet and confer, and they can credibly not do so now. Miller Decl. ¶ 3.

### B. Complying With Twitter's Subpoena Presents No Undue Burden.

Twitter's document requests ask for a small set of specific and easily identifiable documents in Strategic Gaming's possession, custody, and control. Strategic Gaming has not articulated any credible basis for its refusal to produce documents. There is no undue burden to Strategic Gaming in complying with Twitter's subpoena, and Strategic Gaming's lawyers have not argued otherwise. *Id.* Indeed, in neither the parties' telephonic meet and confer nor at any point since, has Strategic Gaming even contended that there would be undue burden associated with searching for and producing the requested documents, let alone articulated what that burden is or why it is disproportional to the needs of the case.[4]

### IV. CONCLUSION

Despite Twitter's attempt to compromise with Strategic Gaming and to explain the reasonableness and scope of its subpoena, Strategic Gaming has failed to produce responsive documents. Compounding this deficiency, Strategic Gaming's counsel simply ignored repeated requests from Twitter to discuss the issues and refused to answer basic questions about Strategic Gaming's document search and production. Twitter respectfully requests that the Court require

---

[4] Strategic Gaming could have filed a motion to quash or a motion for protective order, but did not do so. *See, e.g., Total Rx Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 594 (N.D. Tex. 2017) (party moving to quash subpoena has "burden of proof" to show undue burden); *Am. Fed'n of Musicians*, 313 F.R.D. at 44 ("The party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.").

1 | Strategic Gaming to immediately produce all documents responsive to Twitter's subpoena.

2 | Dated: July _10_, 2017

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: _____
MICHAEL D. ROUNDS
Nevada Bar No. 4734
ADAM K. YOWELL
Nevada Bar No. 11748
5371 Kietzke Lane
Reno, Nevada 89511
Telephone:   773-3324-4100
Facsimile:   773-333-8171

Attorneys for Defendant
TWITTER, INC.

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b) the undersigned certifies that on this date a true and correct copy of the foregoing document, **DEFENDANT TWITTER, INC.'S MOTION TO COMPEL STRATEGIC GAMING MANAGEMENT LLC TO PRODUCE DOCUMENTS PURSUANT TO FED. R. CIV. P. 45**, will be served upon counsel of record below-listed via the following:

Chijioke Ekenedilichukwu Offor  
coffor@ccsb.com  
Mark C Howland  
mhowland@ccsb.com  
Samuel E Joyner  
sjoyner@ccsb.com  
CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, L.L.P.  
901 Main Street, Suite 5500  
Dallas, TX 75202-7211

*Counsel for Youtoo Technologies, LLC and Strategic Gaming Management LLC*

☒ **VIA FIRST CLASS U.S. MAIL:** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Reno, Nevada.

☐ **VIA FACSIMILE:** by transmitting to a facsimile machine maintained by the person on whom it is served at the facsimile machine telephone number as last given by that person on any document which he/she has filed in the cause and served on the party making the service. The copy of the document served by the facsimile transmission bears a notation of the date and place of transmission and the facsimile telephone number to which transmitted.

☐ **BY PERSONAL SERVICE:** by personally hand-delivering or causing to be hand delivered by such designated individual whose particular duties include delivery of such on behalf of the firm, addressed to the individual(s) listed, signed by such individual or his/her representative accepting on his/her behalf. A receipt of copy signed and dated by such an individual confirming delivery of the document will be maintained with the document and is attached.

☐ **VIA ELECTRONIC SERVICE:** by electronically filing the document with the Clerk of the Court using the ECF system which served the parties above-listed.

☐ **VIA ELECTRONIC SERVICE:** as an attachment to electronic mail directed to counsel of record for the parties herein at the email addresses listed above.

DATED: July 10, 2017   /s/ Jeff Tillison  
An Employee of Brownstein Hyatt Farber Schreck, LLC

10